**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3962-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NORMAN POLANCO,

     Defendant-Appellant.

_____

Submitted October 17, 2018 – Decided May 17, 2019

Before Judges Alvarez and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 12-02-0327.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel; William P. Welaj, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Following an evidentiary hearing, Judge Margaret M. Foti denied defendant Norman Polanco's first petition for post-conviction relief (PCR). He appeals. We affirm.

Defendant is serving an aggregate twelve-year prison term with a four-year parole bar, a jury having convicted him of first-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(a)(1), -5(b)(1), and hindering prosecution, N.J.S.A. 2C:29-3(b)(1). The evidence and arguments the parties presented at trial are detailed in the Appellate Division's decision affirming defendant's conviction and sentence on direct appeal, State v. Polanco, No. A-3665-12, (slip op. at 3-10), (App. Div. Mar. 26, 2015), certif. denied, 222 N.J. 18 (2015), and need be summarized only briefly here.

The indictment's charges were based on the undercover work of detectives working with the Bergen County Prosecutor's Office, Narcotics Task Force. Two detectives arranged through a confidential informant to buy twenty grams of cocaine from a co-defendant, Hector Acevedo Figueroa. Id. at 3. Following the purchase, they telephoned Figueroa and arranged to buy a larger quantity of drugs. That night, one of the detectives met Figueroa outside a barbershop where he worked. The detective arranged to buy 500 grams of cocaine for

$17,000. During negotiations for the 500 grams, Figueroa consulted with defendant, who stood nearby. Id. at 4-5. Defendant and the detective spoke, and defendant said when he got the cocaine he would call the detective. The negotiations took place under the surveillance of other task force members. Id. at 7.

Defendant called a couple hours later and the detective – with backup officers nearby – met defendant and Figueroa in the back room of the barbershop to inspect the cocaine before calling his girlfriend to bring the cash. After inspecting the narcotics, the detective made the call. The call was actually a signal to the backup officers, who descended on the barbershop. As the officers announced themselves and entered the barbershop, defendant threw the bag containing the cocaine out the back door and struggled with the officers who tried to apprehend him. He was subdued and arrested. Id. at 5-7

When defendant was tried, "[m]ultiple eyewitnesses identified [him] as being involved in the transaction at issue." Id. at 7. The detective who negotiated the purchase, who had been wearing a transmitting device, identified defendant as the person with whom he negotiated. Another detective, who was observing and listening, identified defendant as the person who negotiated the cocaine sale, the person who later entered the barbershop with a bag, and the

person whom he arrested. Yet another officer identified defendant as the man who, during negotiations with the undercover detective outside the barber shop, walked in and out of the shop while talking on his cellular phone. The same officer, who remained on surveillance, observed a brown minivan pull up and defendant take from the minivan a shopping bag, which was identified as the bag containing the cocaine. Id. at 7-8.

Defendant testified at his trial and denied any involvement:

> According to defendant, at around 4:30 p.m. on August 23, 2011, he went to eat at a local bodega, where he saw Figueroa eating with a customer nicknamed "Frasey" and several other men defendant did not recognize. At around 5:00, defendant finished eating and went to the barber shop. At around 8:00 p.m., Figueroa came into the shop where Frasey and another man were waiting for him. Defendant testified that he left the shop several times to call his wife on his cell phone, because it was noisy inside. At one point, he saw Figueroa outside the shop talking to someone defendant could not identify. Defendant denied discussing drugs or the price of drugs with Figueroa or anyone else.
>
> At around 9:00 p.m., defendant went outside again to call his wife, and from outside the shop, he saw Figueroa enter the back room with Frasey and a third individual. He testified that he re-entered the shop and headed toward the back, because he did not allow that many people in the back room. However, after seeing that nothing unusual was happening, he turned around and left the back room. According to defendant, at that moment the police burst into the shop and something

4

happened that caused him to lose consciousness. When he regained consciousness, he realized that he had been physically attacked. Defendant denied having a shopping bag when he entered the back room, denied throwing the bag out the back door, and denied resisting arrest. He testified that he suffered serious injuries to his face during the incident, a contention the State did not dispute.

Defendant's wife testified that she called her husband often while he was at work, and called him around 9:00 p.m. on August 23, 2011. She stated that defendant told her he was outside the shop but was going inside to see why there were a lot of people going into the back room. She testified that the next thing she heard was the sound of someone being hit and "a commotion." After that she was unable to contact her husband on his cell phone.

Eli Santos testified that he was in the barber shop playing dominoes on the night of August 23, 2011. He testified that he saw Figueroa and two other men he did not recognize enter the back room at about 9:00 or 10:00 that night. He stated that defendant then went into the back room, and a few minutes later the police arrived.

[Id. at 8-10.]

The jury rejected defendant's defense.

Six months after the Appellate Division affirmed defendant's conviction and sentence, and two months after the Supreme Court denied certification, defendant filed his PCR petition. Judge Foti granted defendant an evidentiary hearing concerning two issues: (1) did trial counsel adequately prepare

5

defendant to testify on his own behalf at trial; and, (2) was the interpreter ordered to stop translating during objections throughout the entirety of the defendant's trial. Defendant's trial counsel and defendant testified at the hearing.

Following the hearing, Judge Foti denied defendant's PCR petition in a comprehensive written opinion. Addressing the second question first, the Judge noted that during the presentation of the State's case at trial, counsel was present and had a Spanish interpreter to assist him when necessary. The interpreter continued to assist defendant when he testified.

Judge Foti cited two instances when the trial judge – not Judge Foti – directed the interpreter not to interpret during objections. The first instance occurred when the interpreter asked the court whether he should repeat a question to which an objection had been sustained. The judge said it was not necessary to repeat the question. As Judge Foti noted, the trial judge deemed the subject matter of the question irrelevant, and in any event, the question was not intended to elicit substantive testimony, but was instead a foundational question about defendant's children.

The second instance occurred when the prosecutor objected to defense counsel's attempt to introduce certain photographs. Following the objection,

A-3962-16T1

defense counsel laid a proper foundation through defendant's testimony for the admission of the photographs. Judge Foti concluded that

> [b]ased upon the nature of the objections . . . the interpreter was ordered not to translate, and the fact . . . defendant would not have otherwise been permitted to answer questions that were objected to and sustained, . . . defendant was not denied his due process right to be present at all stages of [the] trial.

Concerning defense counsel's alleged failure to properly prepare defendant to testify at trial, Judge Foti found credible defense counsel's testimony at the PCR hearing that he did indeed prepare defendant. Defense counsel testified he prepared defendant by reviewing with defendant the State's proofs, defendant's version of the events leading to his arrest, and strategic aspects of testifying before a jury, such as making eye contact with jurors and keeping answers short. The judge rejected defendant's argument that his trial counsel should have held a "mock trial" with defendant.

In her written decision, Judge Foti also analyzed and rejected defendant's arguments that were not the subject of the hearing. She concluded defendant had failed to sustain his burden of proving the two elements of an ineffective-assistance claim: that "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and, that "there is a

7

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); accord State v. Fritz, 105 N.J. 42, 58 (1987).

On appeal, defendant argues:

> POINT I: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF FOLLOWING THE EVIDENTIARY HEARING SINCE THE DEFENDANT FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL WITH RESPECT TO HIS DECISION TO TESTIFY AT TRIAL, WHILE THE FACTUAL FINDINGS MADE BY THE TRIAL COURT UNDERLYING ITS DENIAL WERE NOT SUPPORTED BY THE RECORD ESTABLISHED AT THE HEARING.
>
> A. FACTUAL BACKGROUND.
>
> B. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BASED UPON TRIAL COUNSEL'S FAILURE TO PROVIDE ADEQUATE LEGAL REPRESENTATION TO THE DEFENDANT REGARDING HIS DECISION TO TESTIFY, SINCE ITS FACTUAL FINDINGS WERE NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE ARISING OUT OF THE EVIDENTIARY HEARING, AND THEREFORE ARE NOT ENTITLED TO DEFERENCE ON APPEAL.

A-3962-16T1

POINT II: THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.

In a pro se supplemental brief, defendant argues an additional point:

THE POST-CONVICTION JUDGE ERRED BY LIMITING ITS SCOPE OF REVIEW TO THE INEFFECTIVENESS AS IT RELATED TO THE INTERPRETER MATTER, AND BY EXCLUDING ALL OTHER ISSUES RAISED BY THE DEFENDANT.

We affirm, substantially for the reasons expressed by Judge Foti in her well-reasoned written opinion. Defendant's arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3962-16T1